IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Nathaniel David Frushtick and
Julie Solomon Frushtick,

          Plaintiffs,

v.                                  Case No. 1:18-cv-2891-MLB

FeroExpress Inc. and Frantisek
Sepesi,

          Defendants.

_____/

## OPINION & ORDER

In 2017, Defendant Frantisek Sepesi drove a truck into the back of Plaintiff David Frushtick's vehicle. Mr. Frushtick and his wife (Plaintiff Julie Solomon Frushtick) sued Defendant Sepesi and his trucking company (Defendant FeroExpress Inc.) for negligently causing the accident. Mrs. Frushtick also asserted claims for punitive damages and attorneys' fees under O.C.G.A. § 13-6-11. Defendants now move for partial summary judgment on Mrs. Frushtick's claims. (Dkt. 82.) Plaintiffs' uninsured motorist carrier (Bankers Standard Insurance Company), though not a named party to this action, also moves for partial

summary judgment on Mrs. Frushtick's claims. (Dkt. 81.)[1] Finally, Plaintiffs move to preclude Defendant Bankers's expert, Hanada Cox, from offering expert testimony. (Dkt. 83.) The Court grants all three motions.

I. **Summary Judgment Motions**

A. **Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). The nonmoving party then has the

---

[1] An uninsured motorist carrier is "obligated to compensate its insured for actual losses caused by [an] uninsured motorist." *GEICO Indem. Co. v. Whiteside*, 857 S.E.2d 654, 668 n.25 (Ga. 2021). The idea is to "place the injured insured in the same position as if the offending uninsured motorist were covered with liability insurance." *Id.* "[O]nce an uninsured motorist insurance carrier is served in a civil suit against an uninsured/underinsured motorist," as Bankers was here, "it is afforded the right to file defensive pleadings, conduct discovery, and contest issues of liability, damages, or coverage." *Am. Fam. Connect Ins. Co. v. Neema*, 2021 WL 6926688, at *2 n.1 (N.D. Ga. Dec. 22, 2021).

burden of showing that summary judgment is improper by coming forward with "specific facts" showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Salinero v. Johnson & Johnson*, 995 F.3d 959, 964 (11th Cir. 2021).

**B.** **Discussion**

Defendants and Bankers each move for summary judgment on Mrs. Frushtick's claims for punitive damages and attorneys' fees. In response, Mrs. Frushtick says she is "withdrawing her claim for punitive damages." (Dkt. 90 at 3.) So Defendants and Bankers are entitled to summary judgment on that claim. Mrs. Frushtick also says she "do[es] not allege that [her] O.C.G.A. § 13-6-11 claim for attorneys' fees may be recovered against . . . Bankers." (Dkt. 90 at 7.) So Bankers is entitled to summary judgment on that claim as well. The only disputed issue is whether *Defendants* are entitled to summary judgment on Mrs. Frushtick's claim for attorneys' fees.

"O.C.G.A. § 13-6-11 establishes three grounds for an award of fees: bad faith, stubborn litigiousness, and unnecessary trouble and expense."

*McGee v. Patterson*, 746 S.E.2d 719, 727 (Ga. Ct. App. 2013).[2] "Bad faith . . . implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will." *Wachovia Bank of Georgia, N.A. v. Namik*, 620 S.E.2d 470, 475 (Ga. Ct. App. 2005). The bad faith "must relate to defendant's act in th[e] transaction itself prior to this litigation, not to the motive with which it defended the litigation." *Driggers v. Campbell*, 543 S.E.2d 787, 791 (Ga. Ct. App. 2000). "A recovery for stubborn litigiousness or causing unnecessary trouble and expense is authorized if no bona fide controversy or dispute exist[s]." *Id.* "A bona fide controversy exists when there is a dispute of law or fact, on liability or amount of damages, or on any comparable issue." *Coggon v. Fry's Elecs.*, Inc., 2019 WL 2564571, at *2 (N.D. Ga. Mar. 11, 2019); *see Hart v. Walmart Stores E. L.P.*, 2017 WL 6733970, at *3 (M.D. Ga. Dec. 29, 2017) ("[I]f there is a genuine fact dispute on liability or damages, a claim under O.C.G.A. § 13-6-11 need not be submitted to the jury.").

---

[2] O.C.G.A. § 13-6-11 provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

4

Defendants have introduced evidence suggesting that they did not cause the accident in bad faith and that a bona fide controversy exists about their liability. For example, Defendant Sepesi testified he has a clean driving record, Plaintiffs' expert testified Defendant FeroExpress passed a safety audit just weeks before the accident, Defendant Sepesi testified it was Mr. Frushtick who caused the collision by "suddenly stopp[ing] his vehicle on a green signal," and Mr. Frushtick testified there are no aggravating factors warranting punitive damages in this case. (*See* Dkt. 82-1 ¶¶ 9–20.) This shifts the burden to Mrs. Frushtick to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. Mrs. Frushtick has not met that burden. She has not controverted Defendants' evidence or introduced any other evidence in the manner required by Local Rule 56.1. *See* LR 56.1, NDGa.; *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (compliance with Local Rule 56.1, which the Eleventh Circuit holds in "high esteem," is "the only permissible way . . . to establish a genuine

issue of material fact"). So she has not established a genuine issue for trial, and summary judgment is appropriate.[3]

## II. Daubert Motion

### A. Legal Standard

"Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions

---

[3] Mrs. Frushtick's brief does cite her expert, David Dorrity. (Dkt. 90 at 6 & n.1–3.) But evidence cited only in a brief cannot create a genuine issue for trial. *See* LR 56.1, NDGa. And Mrs. Frushtick has not even tried to meet her burden to show that Mr. Dorrity's opinions are admissible under *Daubert*, even after Defendants argued (at length and with some force) that they are *not* admissible. (*See* Dkt. 82-2 at 12–14.) So the Court will not consider Mr. Dorrity's opinions in its resolution of Defendants' motion. *See Cardenas v. State Farm Lloyds*, 2021 WL 4733074, at *1 (S.D. Tex. Sept. 13, 2021) ("[A] plaintiff that fails to respond to a motion to exclude an expert fails to satisfy their burden to prove their expert's testimony is admissible."); *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1252 (N.D. Okla. 2007) ("Mr. Mintzer's proposed expert testimony will be excluded because plaintiffs have made no attempt to demonstrate its admissibility."); Mark *Principi v. Survivair, Inc.*, 2005 WL 5961991, at *5 (M.D. Fla. Oct. 18, 2005) (excluding expert opinion because "Defendant wholly fails to respond to Plaintiff's [*Daubert*] argument"); *see also United States v. Gary*, 2010 WL 1375411, at *1 (S.D. Fla. Mar. 30, 2010) (excluding expert testimony "[s]ince there has not been a responsive pleading filed in opposition to the relief requested by the [*Daubert*] motion"); *Weitlauf v. Parkway Sch. Dist.*, 2008 WL 544716, at *2 (E.D. Mo. Feb. 26, 2008) ("Since the plaintiff did not file a response to the [*Daubert*] motion, she has clearly failed to carry her burden to prove the admissibility of Mr. Weitlauf's expert testimony.").

is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005). The district court must conduct a "rigorous inquiry" into each element to "ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation expert testimony." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). Ultimately, "the admission or exclusion of expert testimony is a matter within the sound discretion of the trial judge." *McDowell v. Brown*, 392 F.3d 1283, 1294 (11th Cir. 2004).

    **B.**    **Discussion**

Bankers has retained Hanada Cox to offer expert testimony about the reasonable value of Mr. Frushtick's post-accident medical care in Georgia. Plaintiffs move to exclude this testimony on the grounds Ms.

Cox is unqualified, her methodology is unreliable, and her opinions are unhelpful. The Court agrees that Ms. Cox is unqualified. So Plaintiffs' motion is granted.

In her expert report, Ms. Cox opines that "the approximately $556,548.36 in [Mr. Frushtick's] billed charges is excessive and that the reasonable and customary value of [his] past medical care . . . is estimated to be $158,176.45." (Dkt. 87-1 at 7.) The methodology underlying this conclusion can be divided into two parts.[4] First, Ms. Cox reviewed Mr. Frushtick's medical bills, identified the applicable "medical code" on each bill (*i.e.*, the universal numerical code for the medical service being billed), and made sure those codes were accurate. (Dkt. 87-1 at 102–103.) Second, Ms. Cox used the codes in conjunction with other data to assign a "reasonable and customary value" to the services billed. (Dkt. 87-1 at 4–7, 102–103.) Exactly how she used the codes depended on the service. For professional services, Ms. Cox identified the Current Procedural Terminology ("CPT") code on the bill and then looked up a national "fee" for that code in three publications: Usual and Customary of Wasserman's

---

[4] Bankers and Ms. Cox are often unclear about their methodology. To the extent there are errors in the Court's description of that methodology, the responsibility for those errors lies with Bankers and Ms. Cox herself.

8

Physicians' Fee Reference, PMIC's Medical Fees, and Optum's National Fee Analyzer. (Dkt. 87-1 at 4.) Ms. Cox pulled the 75th percentile fee from all three publications and picked the median of the three. (Dkts. 87-1 at 4; 85-3 at 47.) She then identified a "geographic modifier" in the publications and applied that modifier to the median figure to calculate "the local Reasonable Value." (Dkt. 89-1 at 352–353.) For outpatient services, Ms. Cox identified the Ambulatory Payment Classification ("APC") code on Mr. Frushtick's bill and then looked up a national fee for that code in data published by the Department of Health and Human Services ("HHS") in the Federal Register. (Dkts. 85-3 at 42; 87-1 at 4; 89-1 at 354.) She then identified a "geographic modifier" in other HHS data and applied that modifier to the national fee to come up with an appropriate local fee. (Dkts. 85-3 at 44–45; 89-1 at 354.) For inpatient services, Ms. Cox identified the Diagnosis-Related Group ("DRG") code on the bill and then plugged that code—along with other information—into an HHS formula published in the Federal Register. (Dkts. 85-3 at 67–74; 87-1 at 5; 89-1 at 355.) This generated a "global value." (Dkt. 87-1 at 5.) "Geographic specificity [was then] determined by the IDME (Indirect Medical Education) factors and Wage Index" as published in the

9

Federal Register. (Dkt. 89-1 at 355.) Finally, for anesthesia charges, Ms. Cox used the following formula: "[base units + time units + modifying units] x conversion factor = anesthesia charge." (Dkts. 87-1 at 4.) Ms. Cox identified the CPT code on Mr. Frushtick's bill and used that code to look up the applicable "base units" in Optum's National Fee Analyzer and in data from the American Society of Anesthesiologists. (Dkt. 87-1 at 4.) She also used the CPT code to determine the "modifying units" (though she does not really explain how). (Dkt. 87-1 at 4.) She ascertained the "time units" from the bill itself. (Dkt. 87-1 at 4.) And she used the CPT code to look up the applicable "conversion factor" in HHS data published in the Federal Register and in data from the American Society of Anesthesiologists. (Dkts. 85-2 at 81–83; 87-1 at 4.) Finally, she applied a "geographic modifier" published by the HHS to generate an appropriate fee for the Atlanta area. (Dkt. 85-2 at 83–84.)[5]

---

[5] Ms. Cox also purported to calculate reasonable fees for other, less significant charges in Mr. Frushtick's medical bills. (*See, e.g.*, Dkt. 87-1 at 5 (describing Ms. Cox's approach to "pharmaceuticals" and "durable medical equipment and supplies").) The parties have not focused on these charges. Neither does the Court. Ms. Cox also conducted a "comparative analysis . . . for outpatient and inpatient services [in the Atlanta area] based on data obtained from American Hospital Directory." (Dkt. 87-1 at 106.) But this analysis was "informational" only; it simply

Ms. Cox may be qualified to perform the first part of her analysis (assigning the right codes).  But Bankers has not shown she is qualified to perform the second part (using those codes to determine a reasonable fee). Bankers claim she is qualified because she is a certified professional coder, previously worked as a director of medical billing at two internal medicine practices in Maryland and Virginia, and currently works as an expert medical billing witness for a litigation consulting company.  (Dkt. 89 at 7–9; *see* Dkt. 87-1 at 199.)  But, on the record before the Court, none of these things make Ms. Cox "the type of person who should be testifying" about the value of Mr. Frushtick's medical services based on the methodology she employs here.  *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 852 (11th Cir. 2021).  And that means she is not "qualified to testify competently regarding the matters [s]he intends to address." *City of Tuscaloosa*, 158 F.3d at 562.

Ms. Cox is a certified professional coder.  But that simply means she can "transform[] descriptions of [medical] services or items into universal numerical medical codes."  (Dkt. 89-1 at 352; *see* Dkt. 85-2 at

---

provided "a comparative of what's in [her] report."  (Dkt. 85-2 at 47.) There is no evidence it actually affected her opinions.  So the Court does not elaborate on it here.

11

93–96; 85-3 at 13–14.) It does mean she can quantify the *value* of those services, much less in the way she purports to do that here. (Dkt. 85-3 at 15–16.) Ms. Cox's prior experience as a medical biller is also insufficient. Although she established fee schedules and negotiated third-party payer contracts as part of her billing work, she did so for different medical services and in different states than those at issue here. And Bankers cites no evidence showing she billed anyone based on the kind of valuation methodology she employs here. Ms. Cox does appear to have replicated her methodology while working as a medical billing expert in other litigation. (*See* Dkt. 85-3 at 20–29.) But "experience developed as a professional expert witness is not sufficient" to qualify as an expert. 29 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Evid. § 6264.1 (2d ed. Apr. 2021); *see Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989) ("[I]t would be absurd to conclude that one can become an expert simply by accumulating experience in testifying."). Only experience "obtained in a practical context" counts. Fed. Prac. & Proc. Evid. § 6264.1.

*Castellanos v. Target Corp.*, 568 F. App'x 886 (11th Cir. 2014) supports the Court's conclusion that Ms. Cox is unqualified. In that case,

12

an expert sought to testify about the reasonable value of plaintiff's inpatient care based on the same DRG formula Ms. Cox employs here.[6] Like Ms. Cox, the expert was a certified professional coder,[7] had worked in a healthcare provider's billing department,[8] had helped establish a "rate structure" for healthcare provides,[9] and often served as an expert witness on the value of medical services.[10] Unlike Ms. Cox, the expert had also worked in the relevant geographical area and, as a consultant, had helped several insurers with valuation issues during the claims process.[11] The trial court still excluded the expert because, although she was "qualified to talk about billing codes," defendant had not shown she was qualified to "testify as to the reasonableness of the charge."[12] The Eleventh Circuit affirmed, saying "the trial judge did not abuse her

---

[6] *Castellanos v. Target Corp.*, 0:11-cv-62467-KMW (S.D. Fla. June 21, 2012), ECF No. 76-6 at 3–6.
[7] *Id.* (S.D. Fla. July 20, 2012), ECF No. 94-5 at 1.
[8] *Id.* (S.D. Fla. July 9, 2012), ECF No. 85-1 at 18–19.
[9] *Id.* (S.D. Fla. June 21, 2012), ECF No. 76-5 at 3.
[10] *Id.* (S.D. Fla. June 21, 2012), ECF No. 76-6 at 7; *id.* (S.D. Fla. July 9, 2012), ECF No. 85-1 at 6–7, 14–15.
[11] *Id.* (S.D. Fla. June 21, 2012), ECF No. 76-5 at 2–4.
[12] *Id.* (S.D. Fla. Oct. 30, 2012), ECF No. 142-2 at 3, 8; *id.* (S.D. Fla. June 10, 2013), ECF No. 168 at 19; *see also Castellanos*, 568 F. App'x 886 (oral argument audio at 2:33–3:01, 6:47–7:14 (noting the trial judge ultimately excluded the expert as unqualified)).

discretion, especially given the expert's broad lack of knowledge of the background and underpinning of the information in the DRG on which the expert relied considerably." *Castellanos*, 568 F. App'x 886. The expert was qualified to opine that "the medical services billed did not reflect medical services actually delivered according to the treatment records." *Id.* at 886 n.2. But she could not testify about "the reasonableness of charges for medical services, assumed to have been delivered." *Id.*

Our case is strikingly similar to *Castellanos*. In addition to the commonalities noted above, Ms. Cox—like the *Castellanos* expert—also has a "lack of knowledge" about important aspects of her methodology. For example, although she relies on a "geographic modifier" pulled from other sources, she does not know how that modifier is calculated or on what it is based. (Dkts. 85-2 at 44–46; 85-3 at 44–45.) She does not understand the DRG formula she purports to apply. (Dkt. 85-3 at 75–76.) It is not even clear whether she knows what the DRG formula is designed to calculate.[13] Ms. Cox also relies on a 75th percentile "fee"—

---

[13] (*See* Dkts. 85-3 at 71 ("[T]he DRG is the reimbursement or the—the reasonable value."), 74 (suggesting the DRG analysis refers to "what

14

published in Wasserman's, PMIC's, and Optum's—that she knows little about. She does not know what the published "fee" actually represents or how it is calculated (which is "the main reason [she] use[s] three different sources instead of just relying on one"). (Dkts. 85-2 at 67–70; 85-3 at 46–47.) She does not know whether it refers to an amount billed, an amount paid, or something else. (*Id.*; *see also* Dkt. 89-1 at 353 (suggesting the fee "represents 75% of the specific community as charging *and/or* accepting this amount or less for the same service" (emphasis added).) She simply "guess[es] you could interpret . . . the word 'fee' for a charge." (Dkt. 85-2 at 67.) And then, in particularly garbled testimony, she suggests it might be some unspecified "combination of what is billed and what is paid." (Dkt. 85-2 at 67–68.) The 75th percentile fee is one of the most important inputs—perhaps *the* most important input—in Ms. Cox's opinion. That she does not know what it means demonstrates—in

---

hospitals, facilities, doctors are billing and getting paid for their services"), 74–75 ("Q. . . . [T]hey use that [DRG] calculation to determine reimbursement amounts, right? A. Reasonable—yeah, or the—exactly, okay, or it's the reasonable value or the average value of a certain service. . . . Well, it's probably not the exact word. It's like national average, local average, you know, and depending on what kind of—whether we're looking at a hospital bill or a doctor bill, yeah, so they're all in different categories."); 89-1 at 355 ("The DRG system is . . . . based upon the actual costs to facilities and health care providers".).)

15

the words of *Castellanos*—a troubling "lack of knowledge" about data "on which [she] relied considerably." 568 F. App'x 886. If the expert was not qualified in *Castellanos*, it is hard to see how Ms. Cox is qualified here.

Even worse for Bankers, our case has aggravating factors that *Castellanos* did not. For one thing, Ms. Cox has repeatedly misrepresented her credentials to this Court. Her CV says she graduated from Montgomery College with an associate's degree. (Dkt. 85-2 at 250.) She testified to the same effect in her deposition. (Dkt. 85-2 at 115–116.) But that was false. She never graduated. She admitted as much in another case. (Dkt. 92-3 at 20–21.) Troublingly, she did not then amend her misrepresentations in this case; instead, she *repeated* them in a supplemental report. (Dkts. 87-1 at 199; *see* Dkt. 89-1 at 359.)[14] "If [Ms. Cox] would lie about her academic credentials, there is no reason to believe that she would not provide erroneous and/or misleading valuation testimony if she believed it would benefit her client." *In re WRT Energy*

---

[14]Defense counsel repeated this untruthfulness in its briefing even though Ms. Cox admitted she had not graduated long before Bankers's briefing here. (Dkt. 89 at 12-13.) And, even when identified as a lie by Plaintiffs, defense counsel did not notify the Court of the error. Plaintiffs chalk this up to Ms. Cox not having been candid with defense counsel. Perhaps.

16

*Corp.*, 282 B.R. 343, 371 (Bankr. W.D. La. 2001) (declining to consider expert testimony because the expert lied about graduating from Stanford University).

Another aggravating factor is that courts have repeatedly precluded Ms. Cox from offering the kind of valuation testimony she wants to present here. These courts have made the same distinction as this Court (and *Castellanos*): "Ms. Cox is qualified to identify discrepancies with the medical treatment provided and the medical codes used for billing. She is not qualified to testify on the reasonable value of the medical expenses incurred by Plaintiff." (Dkt. 101 at 5 (2020 Georgia state court case); *see also* Dkt. 92-4 at 7 (2020 Florida state court case) (applying *Daubert* standard and finding "[Ms. Cox] is most certainly qualified to testify as to any billing mistakes, inconsistencies or coding errors—if those were issues in this case. However, this Court does not find, nor does the case law support, that a medical coding specialist is qualified to testify regarding the usual and customary billing rates for medical procedures.").)[15] That other courts have barred Ms. Cox from

---

[15] In response to Plaintiffs' motion to exclude Ms. Cox's testimony, defense counsel alleged "at no time has [Ms. Cox] been disqualified under

17

offering valuation testimony bolsters the Court's conclusion that she should be barred from doing so here.[16]

---

Daubert or had any of her opinions excluded." (Dkt. 89 at 12.) That apparently was not true when said. The Florida order cited above was entered seven months *before* counsel's representation. In it, the court expressly stated Ms. Cox's testimony would be excluded "on the basis that she is not qualified to render the proposed expert testimony, her testimony is not relevant, and her testimony is not based upon reliable principles or methodology." (Dkt. 92-4 at 9.) It is hard to understand how defense counsel could make the representation they did. And even when Plaintiff identified the untruthfulness, counsel said nothing by way of an explanation. Maybe defense counsel can blame Ms. Cox again, but they should know the facts.

[16] Since then, several other courts have excluded her testimony. See *also Anderson v. Bagheri*, 2020 WL 5666779, at *1 (Va. Cir. Ct. Sep. 4, 2020) ("Plaintiff's Motion to Exclude Testimony and Opinions of Defense Expert Hanada Cox is . . . . GRANTED as to . . . Cox's proffered opinions regarding the reasonableness of medical bills."); *Martinez v. Flexdrive Services LLC*, 2020 WL 9439568, at *1 (Tex. Dist. July 20, 2020) ("[T]he affidavits of Hanada Cox, CPC, are excluded and Hanada Cox, CPC, is not permitted to testify in this matter."); *Allen v. Brooks*, 2020 WL 6537327, at *1 (Tex. Dist. May 29, 2020) ("[T]he Counter-Affidavit of Hanada Cox, C.P.C. . . . is stricken in its entirety."); *see also Shakeri v. Gable*, 2021 WL 454500, at *1 (Va. Cir. Ct. Jan. 29, 2021) ("Plaintiff's Motion to Exclude Testimony and Opinions of Defense Expert Hanada Cox, CPC is GRANTED.").

All in all, Bankers has not met its burden of showing Ms. Cox is qualified to opine on the reasonable value of Mr. Frushtick's medical care. So Ms. Cox's testimony is excluded.[17]

## III. Conclusion

The Court **GRANTS** Bankers Standard Insurance Company's Motion for Partial Summary Judgment (Dkt. 81), **GRANTS** Defendants' Motion for Partial Summary Judgment (Dkt. 82), and **GRANTS** Plaintiffs' Motion to Exclude the Purported Expert Testimony of Hanada Cox (Dkt. 83). The Court **ORDERS** the parties (and Bankers) to meet and confer in a serious, good faith effort to resolve this case within the

---

[17] Even if Ms. Cox were qualified, the Court would still exclude her testimony on reliability grounds. Defendant Bankers has not shown her opinions are "supported by appropriate validation" or that they are "properly grounded, well-reasoned, and not speculative." *United States v. Frazier*, 387 F.3d 1244, 1261–62 (11th Cir. 2004). The Court is particularly unimpressed by defense counsel's attempt to use a vague "To Whom It May Concern" letter—dated years before this litigation—to show Ms. Cox's "methodology has in fact been peer-reviewed and deemed to be industry standard." (Dkts. 89 at 22; 89-1 at 382.) The two-page letter is wholly conclusory, we know nothing about its context, and it does not even identify the methodology it purports to approve. (Dkt. 89-1 at 382–383.) The Court adds this to its concerns with defense counsel's candor and preparedness. It is a rare occurrence when counsel makes three bold statements (education, acceptance, and peer review), all of which end up being untrue. The Court will not permit this nonchalance for the truth to continue and looks forward to some explanation by Defendant Bankers.

next thirty (30) days. At least some of these discussions must be in person.

**SO ORDERED** this 18th day of March, 2022.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE